WALL, Appellant,

v.

TRIMBLE, Admr., et al., Appellees.

[Cite as *Wall v. Trimble* (1996), 116 Ohio App.3d 79.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 95 C.A. 45.

Decided Dec. 3, 1996.

*Charles E. Curry, John J. Dixon* and *Milton Hayman,* for appellant.

*Joseph Young, Jr., Betty D. Montgomery,* Attorney General, and *Robert Marek,* Assistant Attorney General, for appellees.

JOSEPH E. O'NEILL, Presiding Judge.

On November 27, 1990, Bill S. Wall, the appellant, an employee of the Youngstown Street Department, was a passenger in a city truck. Hershel Fordham, a fellow employee, backed the truck into a pole, allegedly causing the appellant to be injured.

On January 29, 1993, the appellant signed a Workers' Compensation Form C–3, an Application for Payment of Medical Benefits and, then, on February 10, 1993, the appellant signed a Workers' Compensation Form C–1, an Application for Payment of Compensation and Medical Benefits. His claims were denied throughout the administrative process as not being timely filed. The appellant pursued an appeal to the common pleas court, which court granted summary judgment in favor of the appellees. A timely notice of appeal was filed, directed to that final judgment entry.

The first assignment of error contends that the trial court erred in granting defendants' motions for summary judgment for the reason that the statute of limitations contained in R.C. 4123.85 was extended by failure of the city to file a report required by R.C. 4123.28.

R.C. 4123.85 reads as follows:

"In all cases of occupational disease, or death resulting from occupational disease, claims for compensation or benefits shall be forever barred unless, within two years after the disability due to the disease began, or within such longer period as does not exceed six months after diagnosis of the occupational disease by a licensed physician or within two years after death occurs, application is made to the industrial commission or the bureau of workers' compensation or to the employer in the event the employer has elected to pay compensation or benefits directly."

Very obviously, appellant's claims for compensation and benefits were not filed within two years after the alleged disability arose.

R.C. 4123.28 reads as follows:

"Every employer in this state shall keep a record of all injuries and occupational diseases, fatal or otherwise, received or contracted by his employees in the course of their employment and resulting in seven days or more of total disability. Within a week after acquiring knowledge of an injury or death therefrom, and in the event of occupational disease or death therefrom, within one week after acquiring knowledge of or diagnosis of or death from an occupational disease or of a report to the employer of the occupational disease or death, a report thereof shall be made in writing to the bureau of workers' compensation upon blanks to be procured from the bureau for the purpose. The report shall state the name

and nature of the business of the employer, the location of his establishment or place of work, the name, address, nature and duration of occupation of the injured, disabled, or deceased employee and the time, the nature, and the cause of injury, occupational disease, or death, and such other information as is required by the bureau.

"The employer shall give a copy of each report to the employee it concerns or his surviving dependents.

"No employer shall refuse or neglect to make any report required by this section.

"Each day that an employer fails to file a report required by this section constitutes an additional day within the time period given to a claimant by the applicable statute of limitations for the filing of a claim based on the injury or occupational disease, provided that a failure to file a report shall not extend the applicable statute of limitations for more than two additional years."

In his motion for summary judgment, at no point did the appellant establish that Youngstown had ever had knowledge that he had, during the two-year period, suffered seven days or more of total disability. There is no question but that he was injured in the accident.

The appellant filed two motions for summary judgment in the trial court. The first motion carried with it various attachments, none of which could be considered by the trial court. The second motion carried with it various attachments, none of which could be considered by the trial court. In a summary judgment proceedings, the trial court may consider only " * * * the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action * * *. No evidence or stipulation may be considered except as stated in this rule." Civ.R. 56(C).

In the motion for summary judgment, filed by the defendants, there was attached as a part of that motion the deposition of the defendant-appellant. The appellant insists that, at different times, his absences due to his alleged injury were well in excess of the seven-day reporting period. However, in his deposition, it was firmly established that he did not inform defendant Youngstown that his absences were due to his injury:

"Q   When you took off 36 and a half days in 1991, 28 days in 1992, and 35 days in 1993, according to your answer to Interrogatory No. 8, were you asked to supply any doctor slip?

"A   No.

"Q   Or medical excuse or anything like that?

"A   No.   In fact, all the way up until the time that I filed Workmen's Comp, the City never had a problem on the days that I took off, because they knew what it was for.   Once I took off, and I was provided with the paperwork, filing for a claim number on my own, the City had informed me that if I wouldn't have jumped the gun—and this is the way that they put it—if you wouldn't have jumped the gun, we would have got it straightened out and paid your medical bills.   I told them I could not continue to work any longer.   I was going to do permanent body damage to myself, possibly death, and they said, well, now, you've got to suffer."

The plaintiff-appellant went on to further testify:

"Q   Up to July of '93, whenever you called off, you called off to a security guard?

"A   Yes.

"Q   Rather than to Mr. Dundee, Mr. Olenick or anyone else?

"A   Right, you didn't have to call in.

"Q   Right.   I'm not asking what you had to do and what you did do, and what you did do was call the security guard?

"A   Right.

"Q   And you were directed to do so, or you understood that that was the required or requested procedure?

"A   That was the procedure.

"Q   All right.   But you never had a conversation with Mr. Dundee [appellant's supervisor] in which you said, I'm calling you to let you know I'm off and I'm off due to the injury I suffered on 11/28/90?

"A   Not since the time of the original accident.

"Q   Okay.   So you had one conversation with him the day of or the day after the accident, in which you may have advised him that you may need time off in the future.   And the next time you discussed taking off with him was in 1993?

"A   Right.

"Q   And in between, you talked to security guards?

"A   That's what I was instructed to.

"Q   And you've identified them to us?

"A   Yes.

"Q   Are any of them management, employees?

"A   No."

It is evident from the matters submitted in the summary judgment proceedings that at no time did defendant Youngstown have knowledge that the plaintiff-appellant's injury resulted in seven days or more of total disability. R.C. 4123.28 is clear and unambiguous and does not call for interpretation. Very specifically, that statute requires that an employer keep a record of all injuries and occupational diseases received by its employees in the course of their employment which result in seven days or more of total disability. If an injury does not result in seven days or more of total disability, the employer is not required to keep a record. However, a further review of R.C. 4123.28 results in a conclusion that within a week, after an employer acquires knowledge of an injury, the report thereof must be made in writing to the Bureau of Workers' Compensation upon blanks which can be procured from the bureau for that purpose. It was clearly established in the summary judgment proceedings that the appellant, on the day of his alleged injury and on the day following his alleged injury, reported his injury to one of his supervisors. As a part of the appellant's deposition, the following dialogue took place:

"Q On your answer to No. 23 of the interrogatories are the names of some people that you notified—which you say you notified on November 28, 1990. And you mentioned John Olenick's name, which you told me about, and you mentioned Bill Dundee's name also?

"A Right.

"Q You didn't tell me earlier that you had spoken with Bill Dundee. You didn't mention his name at all—

"A I'm sorry.

"Q —until we got to this accident report. Did you speak to him the very same day?

"A Yes, I did.

"Q When did you see him?

"A I saw him when I got finished with John Olenick. I was walking down the hallway.

"Q And what kind of discussion did you have about your accident?

"A I told him I was going to see my doctor today, and I was in an accident last night. He told me, well, did you fill in an incident report. I said, yes, I did. He said don't worry about it."

As a part of this summary judgment proceeding, the affidavit of William Dundee, Building Commissioner and head of the Street Department for Youngstown, was filed. As a part of his affidavit, Dundee expressed that he had been advised, in late November 1990, that Bill Wall had reported an accident on

November 28, 1990 involving a crew truck operated by an employee named Hershel Fordham. Dundee further stated in his affidavit that, to the best of his knowledge, Bill Wall did not miss any time for work as a result of the accident, nor did Dundee recall that Bill Wall had been placed on light duty following the accident because, to the best of his recollection, the street department did not have any light duty positions. Dundee went on to state that Bill Wall was absent from work on numerous occasions in 1991 and 1992 but that he was never advised by Bill Wall that any of the absences were alleged to be the result of the November 28, 1990 accident.

Thus, there arises an issue of material fact. The appellant contends that he reported his injury to Dundee, his supervisor, on the date of the accident. Dundee states that he had no knowledge that Wall was injured in the accident until March 12, 1993.

"Summary judgment may be granted only if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Civ.R. 56(C).

"Sections 4123.01 to 4123.94, inclusive, of the Revised Code shall be liberally construed in favor of employees and the dependents of deceased employees." R.C. 4123.95.

The judgment of the trial court is reversed, and this cause is remanded for further proceedings according to law and this opinion.

*Judgment reversed*
*and cause remanded.*

GENE DONOFRIO, J., concurs.

COX, J., dissents.

Cox, Judge, dissenting.

I respectfully dissent.

The material fact in this matter concerns whether Youngstown had knowledge that appellant was injured resulting in seven days or more of total disability. Taking appellant's testimony as the only evidence, it is still apparent that although he informed his supervisor at the time of the accident, he did not seek medical treatment until the next day. He then went on "light duty." However, neither of the supervisors knew about the "light duty." His absences were never

recorded as being injury-related. The trial court was correct in its ruling and I would affirm.